**BAKER & HOSTETLER LLP**

45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Irving H. Picard, Esq., Trustee for the*
*Substantively Consolidated SIPA Liquidation of Bernard L. Madoff*
*Investment Securities LLC and Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> v. <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 (BRL) <br><br> SIPA Liquidation <br><br> (Substantively Consolidated) |
| In re: <br><br> BERNARD L. MADOFF, <br><br> Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, <br><br> Plaintiff, <br><br> v. <br><br> RUTH MADOFF, <br><br> Defendant. | Adv. Pro. No. _____ (BRL) |

**<u>COMPLAINT</u>**

Irving H. Picard, Esq. (the "Trustee"), as trustee for the consolidated liquidation proceedings of Bernard L. Madoff Investment Securities LLC ("BLMIS" or, alternatively, the "Company"), under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq*. ("SIPA"), and Bernard L. Madoff ("Madoff") individually, by and through his counsel, Baker & Hostetler LLP, for his Complaint against Ruth Madoff ("Mrs. Madoff"), based on actual knowledge and information and belief, states the following:

## NATURE OF PROCEEDING

1.    This adversary proceeding is part of the Trustee's continuing duty to seek to recapture and return the investment funds of the customers of BLMIS that were diverted by Bernard L. Madoff in the course of his massive Ponzi scheme.

2.    For decades, Mrs. Madoff lived a life of splendor using the money of BLMIS's customers.  Regardless of whether or not Mrs. Madoff knew of the fraud her husband perpetrated at BLMIS, during the past two- and six-year statutory periods, she received tens of millions of dollars from BLMIS for which BLMIS received no corresponding benefit or value and to which Mrs. Madoff had no good faith basis to believe she was entitled.  The purpose of this action is to recover that money to the extent possible for the benefit of BLMIS and its defrauded customers.

3.    The Madoffs have forfeited their homes, financial holdings, and other property in connection with Madoff's criminal sentence.  The United States government agreed not to contest Mrs. Madoff's claim to $2.5 million and to make a payment to her in that amount following forfeiture of the Madoffs' assets.  The forfeiture Stipulation And Order, dated June 26, 2009 (the "Forfeiture") (copy attached), expressly provides that the $2.5 million payment to Mrs. Madoff "does not in any way preclude . . . Irving H. Picard, Esq. as trustee for the liquidation of the

business of defendant Bernard L. Madoff Investment Securities LLC . . . from seeking to recover the Funds from Ruth Madoff." While Madoff's crimes have left many investors impoverished and some charities decimated, Mrs. Madoff remains a person of substantial means. The inequity between Mrs. Madoff's continuing financial advantages and the economic distress of Madoff's customers compels the Trustee to bring this action.

4.    At this time, the Trustee has identified at least $44,822,355 that is subject to recapture from Mrs. Madoff. Of this amount, Mrs. Madoff received at least $23,765,534 directly or indirectly from BLMIS during the two-year period prior to BLMIS's bankruptcy filing (the "Two-Year Transfers"). These payments constitute fraudulent transfers which must be returned. Beyond this, the Trustee has identified at least an additional $21,116,820 received by Mrs. Madoff during the six-year period prior to BLMIS's bankruptcy filing. These payments may be recaptured as fraudulent conveyances under the Bankruptcy Code and applicable law (the "Six-Year Period Transfers" and, collectively with the Two-Year Transfers, the "Transfers"). Accordingly, judgment should be entered in no less than the total amount of $44,822,355 (exclusive of any additional amounts the Trustee later discovers) that Ms. Madoff knew, or should have known, belonged to BLMIS and to its customers so that, to the extent possible, the funds can be returned to the Trustee for the benefit of all the victims of the Madoff Ponzi scheme.

5.    This adversary proceeding is brought pursuant to 15 U.S.C. §§ 78fff(b), 78fff-1(a), and 78fff-2(c)(3), 11 U.S.C. §§ 105(a), 502(d), 541, 542, 544, 548(a), 550(a), and 551 (11 U.S.C. §§ 101 et. seq. are referred to herein as the "Bankruptcy Code"), and the New York Fraudulent Conveyance Act (N.Y. Debt & Cred. § 270 et. seq.), to set aside fraudulent transfers and fraudulent conveyances, and pursuant to New York common law for a constructive trust, an

accounting, and to recover the money improperly received by Mrs. Madoff from BLMIS due to conversion and unjust enrichment.

## THE PARTIES

6.     Defendant Ruth Madoff has been married to Bernard L. Madoff for 49 years.  Mrs. Madoff was a Controller at Madoff Securities International Ltd. ("MSIL")—a related British company in which she personally held an interest—and she had business responsibilities for account reconciliation within the Company's Investment Advisory Business (the "IA Business"). Mrs. Madoff was a BLMIS insider as defined by Section 101(31) of the Bankruptcy Code.

## JURISDICTION AND VENUE

7.     This is an adversary proceeding brought in this Court, in which the main underlying substantively consolidated SIPA case, No. 08-01789 (BRL) (the "SIPA Case"), is pending.  The SIPA Case was originally brought in the United States District Court for the Southern District of New York (the "District Court") as *Securities Exchange Commission vs. Bernard L. Madoff Investment Securities LLC et al.*, No. 08 CV 10791 (the "District Court Proceeding").  This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b), Federal Rules of Bankruptcy Procedure 7001(1), (2), (7), (8), and (9), and 15 U.S.C. §§78eee(b)(2)(A), (b)(4).

8.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (C), (E), (H), and (O).

9.     Venue in this district is proper under 28 U.S.C. § 1409.

## BACKGROUND, THE TRUSTEE, AND STANDING

10.  On December 11, 2008 (the "Filing Date"), Bernard Madoff was arrested by federal agents for violation of the criminal securities laws, including, *inter alia*, securities fraud, investment adviser fraud, and mail and wire fraud.  Contemporaneously, the Securities and Exchange Commission ("SEC") filed a complaint in the District Court which commenced the District Court Proceeding against Madoff and BLMIS.  The District Court Proceeding remains pending in the District Court.  The SEC complaint alleged that Madoff and BLMIS engaged in fraud through the investment advisor activities of BLMIS.

11.  On December 12, 2008, The Honorable Louis L. Stanton of the District Court entered an order, which appointed Lee S. Richards, Esq. as receiver for the assets of BLMIS (the "Receiver").

12.  On December 15, 2008, pursuant to 15 U.S.C. § 78eee(a)(4)(A), the Securities and Exchange Commission consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC").  Thereafter, pursuant to 15 U.S.C. § 78eee(a)(4)(B), SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA.

13.  Also on December 15, 2008, Judge Stanton granted the SIPC application and entered an order pursuant to SIPA (the "Protective Decree"), which, in pertinent part:

    (a)       appointed the Trustee for the liquidation of the business of BLMIS pursuant to 15 U.S.C. § 78eee(b)(3);

    (b)       appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to 15 U.S.C. § 78eee(b)(3); and

(c)    removed the case to this Bankruptcy Court pursuant to 15 U.S.C. § 78eee(b)(4). By this Protective Decree, the Receiver was removed as Receiver for BLMIS.

14.    By orders dated December 23, 2008 and February 4, 2009, respectively, the Bankruptcy Court approved the Trustee's bond and found that the Trustee was a disinterested person.  Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate of BLMIS.  In addition, the bankruptcy estate of Bernard L. Madoff, individually, was substantively consolidated into the estate of BLMIS by order of the Bankruptcy Court dated June 9, 2009.

15.    At a plea hearing (the "Plea Hearing") on March 12, 2009, in the case captioned *United States v. Madoff,* Case No. 09-CR-213(DC), Madoff pled guilty to an 11-count criminal information filed against him by the United States Attorneys' Office for the Southern District of New York.  At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]."  (Plea Hr'g Tr. at 23: 14-17).  Additionally, Madoff asserted, "[a]s I engaged in my fraud, I knew what I was doing [was] wrong, indeed criminal." (*Id.* at 23: 20-21).  On June 29, 2009, Madoff was sentenced to a prison term of 150 years and he and Mrs. Madoff entered into the Forfeiture.

16.    As the Trustee appointed under SIPA, the Trustee has the job of recovering and paying out customer property to BLMIS' customers, assessing claims, and liquidating any other assets of the firm for the benefit of the estate and its creditors.  The Trustee is in the process of marshalling BLMIS' assets, and the liquidation of BLMIS' assets is well underway.  The assets recovered, however, will not be sufficient to reimburse the customers of BLMIS for the billions of dollars that they invested with BLMIS over the years.  Consequently, the Trustee must use his authority under SIPA and the Bankruptcy Code to pursue recovery from, among others, Mrs.

Madoff who received fraudulent transfers and fraudulent conveyances of money which belonged to BLMIS and its defrauded customers.  Absent this or other recovery actions, the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of 15 U.S.C. § 78fff-2(c)(1).

17.  Pursuant to 15 U.S.C. § 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code (in addition to the powers granted by SIPA pursuant to 15 U.S.C. § 78fff(b)).  Chapters 1, 3, 5, and Subchapters I and II of Chapter 7 of the Bankruptcy Code are applicable to this case.

18.  Pursuant to 15 U.S.C. § 78*lll*(7)(B), the Filing Date is deemed to be the date of the commencement of the case and the filing of the petition within the meanings of sections 544 and 548 of the Bankruptcy Code.

19.  The Trustee has standing to bring these claims pursuant to 15 U.S.C. § 78fff-1 and the Bankruptcy Code, including sections 323(b) and 704(a)(1) because, among other reasons:

(a)      BLMIS incurred losses as a result of the claims set forth herein;

(b)      the Trustee is a bailee of customer funds entrusted to BLMIS for investment purposes;

(c)      the Defendant received "Customer Property" as defined in 15 U.S.C. § 78*lll*(4);

(d)      SIPC has not, and will not, fully reimburse the customers for their losses;

(e)      the Trustee is the assignee of claims paid, and to be paid, to customers of BLMIS who have filed claims in the liquidation proceeding (such claim-filing customers, collectively,

"Accountholders").  As of this date, the Trustee has received multiple express unconditional assignments of certain claims of the applicable Accountholders which they could have asserted. As assignee, the Trustee stands in the shoes of persons who have suffered injury-in-fact and a distinct and palpable loss for which the Trustee is entitled to reimbursement in the form of monetary damages;

(f)      SIPC has expressly conferred to the Trustee its rights of subrogation with respect to payments it has made and is making to customers of BLMIS from SIPC funds; and

(g)      the Trustee has the power and authority to avoid and recover transfers pursuant to sections 544, 548, 550(a), and 551 of the Bankruptcy Code and 15 U.S.C. § 78fff-2(c)(3).

## THE FRAUDULENT PONZI SCHEME

20.  BLMIS is a New York limited liability company that was wholly owned by Bernard Madoff.  It operated from its principal place of business in the "Lipstick Building" at 885 Third Avenue, in Manhattan.  BLMIS was registered with the SEC as a securities broker-dealer under §15(b) of the Securities Exchange Act of 1934.  (15 U.S.C. § 78*o*(b)).  By virtue of that registration, BLMIS is a member of SIPC.

21.  For years, the IA Business purported to utilize a "split-strike conversion" strategy that it claimed generated enormous and steady financial returns for its customers.  In truth, though, BLMIS never implemented this strategy, or any other.  At the Plea Hearing, Madoff admitted that he never in fact purchased any of the securities he claimed to have purchased for customer accounts.  The Trustee's investigation to date establishes that, to the extent that records are available, BLMIS never carried out an actual IA business; it simply deposited the customers' investment funds in a bank account and used the money to pay other customers' redemptions

based on fictitious profits and for the personal enrichment of Madoff and his family. The entire IA Business was a fraudulent Ponzi scheme.

## THE PONZI SCHEME BENEFITED MRS. MADOFF

22. The Madoff Ponzi scheme massively enriched Mrs. Madoff. She received substantial transfers of money from BLMIS which belonged to the Company and, ultimately, its customers.

### Two-Year Period Fraudulent Transfers

23. In the two-year period prior to the Filing Date of BLMIS, as detailed below (¶¶ 24-32), Mrs. Madoff received at least $23,765,534 from BLMIS in the form of direct payments to her as well as payments to entities she owned and/or controlled together with other family members or as an investor (collectively, the "Two-Year Period Fraudulent Transfers").

24. Mrs. Madoff was an investor in DWD Associates LLC ("DWD"), an entity controlled by the Blumenfeld Development Group. Mrs. Madoff's ownership stake in this business was entirely financed by BLMIS. On December 8, 2008, BLMIS transferred approximately $11 million from the IA Business operating account at JPMorgan Chase (the "703" account) to DWD in consideration for Mrs. Madoff's ownership interest in DWD. BLMIS did not receive any corresponding benefit or value for this $11 million payment.

25. On November 26, 2008, after receiving funds from BLMIS, MSIL directed a wire transfer from its account at Anglo Irish Bank in London in the amount of $2,088,692.06 to Mrs. Madoff's personal account at Wachovia Bank. BLMIS did not receive a corresponding benefit or value for this transfer of funds to Mrs. Madoff.

26. On December 20, 2007, after receiving funds from BLMIS, MSIL wired $2,785,515.55 from an MSIL account at Barclay's Bank to Mrs. Madoff's personal account at the Bank of New York (the "690" account). The MSIL system indicated that this amount was an interest payment on a loan. Indeed, the Trustee has discovered that on December 27, 2001, BLMIS loaned $25 million to MSIL. The loan funds, however, originated from the 703 account maintained by the IA Business at JPMorgan Chase. Thus, BLMIS made the loan but Mrs. Madoff personally received the payments on the loan. BLMIS received no corresponding benefit or value for the funds paid by MSIL to Mrs. Madoff.

27. Mrs. Madoff was also an investor in a series of private equity funds which primarily invested in real estate (the "Sterling Entities"). Mrs. Madoff's capital contributions to the Sterling Entities, however, were paid entirely by BLMIS. For example, on July 17, 2008, BLMIS transferred $720,000 from the 703 JPMorgan Chase account to Sterling American Property V for the benefit of Mrs. Madoff. Similarly, on October 2, 2008, Mrs. Madoff received a "Confidential Memo" from Arthur Friedman requesting a payment of $59,714.46 to Sterling Acquisitions LLC in order to finance the purchase of excess shares issued by Changing World Technologies. Rather than paying the money herself, however, Mrs. Madoff's capital contribution was paid by BLMIS on November 4, 2008 when $59,714.46 was wired from a BLMIS account (the "509" account) to Sterling Acquisitions LLC to satisfy Mrs. Madoff's obligation. Finally, on May 3, 2007, BLMIS wired $1,030,000 from its 703 account at JPMorgan Chase to Sterling American Property V on Mrs. Madoff's behalf. There is no evidence that BLMIS received investment income or any other benefit from Mrs. Madoff or the Sterling entities for the use of these funds.

28.  BLMIS funds were also used to pay for personal expenses charged to Mrs. Madoff's American Express card.  During the two years prior to the Filing Date, BLMIS paid for approximately $1.1 million in personal expenses charged to Mrs. Madoff's American Express card, for which BLMIS did not receive a corresponding benefit or value.

29. On December 27, 2006, after receiving funds from BLMIS, MSIL wired $1,905,693.37 from its account at Anglo Irish Bank to Mrs. Madoff's personal account at the Bank of New York.  As with the 2007 payment to Mrs. Madoff (*see* ¶ 25), this payment was purportedly made to service a 2001 loan made by BLMIS.  Yet MSIL made its payment not to BLMIS but to Mrs. Madoff.  BLMIS received no corresponding benefit or value for this payment to Mrs. Madoff.

30. Mrs. Madoff also received BLMIS funds through MSIL to pay for a yacht for her personal enjoyment.  In 2007, MSIL transferred a total of $2,782,962 to Mrs. Madoff's personal accounts for, on information and belief, payments for Mrs. Madoff's yacht, as follows:  January 11, 2007, $776,358; March 13, 2007, $789,420; April 24, 2007, $813,444; and June 4, 2007, $403,740.  BLMIS received no corresponding benefit or value for these payments.

31. Mrs. Madoff was also an investor in two other private investment funds—namely, Delta Fund I, L.P. and Delta Ventures (Cayman) Ltd (the "Delta Funds").  On March 26, 2007, BLMIS wired $175,000 from its 703 operating account to Delta Fund I, L.P., on behalf of Mrs. Madoff.  BLMIS received no corresponding benefit or value for this payment.

32. Between 1996 and 2008, BLMIS sent $6.4 million from the House 5 operating account to an entity called LaGuardia Corp Center Associates, LLC ("LaGuardia").  Although

BLMIS made the investments into LaGuardia, on January 17, 2007, Mrs. Madoff received a

deposit of $117,957 from LaGuardia to her personal investment account at Cohmad Securities.

**Six-Year Fraudulent Transfer Period Payments**

33. During the six-year period prior to the Filing Date, exclusive of the fraudulent

transfers detailed above (i.e., December 11, 2002 - December 11, 2006), Mrs. Madoff received

an additional $21,116,820 from BLMIS (collectively, the "Six-Year Period Transfers"), as

detailed below (¶¶ 34-41).

34. During this period, using funds it received from BLMIS, MSIL wired four

payments totaling $ 4,270,264.80 to Mrs. Madoff's personal account at Bank of New York.

Specifically, these transactions were:  December 20, 2002, $1,201,513.41; December 24, 2003,

$1,213,424.66; December 23, 2004, $869,178.10; and December 20, 2005, $986,148.63.  MSIL

records purport to show that $3,068,751.39 of this amount was paid to service loans made by

BLMIS (although the payments were made to Mrs. Madoff, personally).  Regardless, BLMIS

received no corresponding benefit or value for the payment of any of these amounts.

35. On October 2, 2003, from funds received from BLMIS, MSIL wired $2,337,400

to Mrs. Madoff's personal account for the purchase of a yacht for the personal enjoyment of Mrs.

Madoff and her family.  This yacht served no legitimate business purpose and BLMIS derived no

corresponding benefit or value for this money paid to Mrs. Madoff.

36. Mrs. Madoff also received funds from BLMIS via an entity called Madoff

Technologies LLC ("Madoff Technologies"), an investment vehicle for Mrs. Madoff and certain

of her family members—her children, Andrew and Mark Madoff, her brother-in-law, Peter

Madoff, and her niece, Shana Madoff, among others. Mrs. Madoff, herself, owned 44.55% of Madoff Technologies LLC. On February 21, 2003, $4.26 million was wired from BLMIS's 703 account to Madoff Technologies. Mrs. Madoff's 44.55% ownership share of this money amounts to $1,897,830. BLMIS received no corresponding benefit or value from this payment.

37. On January 7, 2004, $5,227,563.16 was wired from Madoff Technologies directly to Mrs. Madoff's personal account at the Bank of New York. This exact amount was subsequently transferred to Mrs. Madoff's personal investment account at Cohmad Securities one week later, on January 15, 2004. BLMIS received no corresponding benefit or value for this money which, through Madoff Technologies, was transferred to Mrs. Madoff.

38. Between December 11, 2002 and December 11, 2006, in a total of nine payments, BLMIS funds were also used to invest an additional $2,344,672 in the Sterling Entities for Mrs. Madoff's personal benefit, as follows:

| Date | Amount |
| --- | --- |
| January 14, 2003 | $130,129 |
| February 3, 2003 | $140,000 |
| March 28, 2003 | $200,000 |
| April 15, 2003 | $139,640 |
| April 25, 2003 | $226,789 |
| May 28, 2003 | $111,712 |
| June 29, 2004 | $279,281 |
| July 6, 2004 | $279,281 |
| May 27, 2005 | $837,843 |

There is no evidence that BLMIS received investment income or any other benefit from Mrs. Madoff or the Sterling Entities for the use of these funds.

39. In the six-year period prior to the Filing Date, excluding the payments previously described (*see* ¶ 31), BLMIS wired funds on Mrs. Madoff's behalf to the Delta Funds on five separate occasions. On January 31, 2003, BLMIS wired $250,000; on September 22, 2003, BLMIS sent two payments totaling $250,000 from the 703 operating account; on June 22, 2004, BLMIS sent another $250,000 from the House 5 operating account (the "621" account for BLMIS's market-making and proprietary desk businesses); on September 12, 2005, another $75,000 was sent from the 621 account; and on April 5, 2006, another $125,000 was sent to the Delta Fund. All of these payments were made utilizing BLMIS funds for the benefit of Mrs. Madoff. BLMIS received no corresponding benefit or value for the payment of any of these amounts.

40. Mrs. Madoff was also an investor in a business called PetCare RX. To date, during the six-year period, the Trustee has discovered that a total of $2,000,000 was sent to PetCare RX from BLMIS's operating accounts (the 621 and 703 accounts) to pay for Mrs. Madoff's investment. These payments were as follows: March 21, 2003, $500,000; August 18, 2003, $500,000; and November 17, 2005, $1,000,000. BLMIS received no corresponding benefit or value for any of these amounts.

41. During this period, too, BLMIS funds were used to pay for personal expenses charged to Mrs. Madoff's American Express card. Between December 11, 2002, and December 11, 2006, BLMIS paid for an additional $2,089,088 in personal expenses charged to Mrs. Madoff's American Express card, for which BLMIS did not receive a corresponding benefit or value.

42. Ruth Madoff was never an employee of BLMIS yet millions of dollars belonging to BLMIS and its customers found their way into her personal accounts and investments without any legitimate business purpose or any value or benefit to BLMIS, simply because of her relationship with Bernard Madoff. Mrs. Madoff knew, or should have known, that what she received was not hers, and that the vast sums of money she received from BLMIS belonged to the Company and to BLMIS's customers.

## NATURE OF THE CLAIMS AGAINST MRS. MADOFF

43. At all times relevant hereto, BLMIS was insolvent in that (i) its assets were worth billions of dollars less than the value of its liabilities; (ii) it could not meet its obligations as they came due; or (iii) at the time of the transfers to Mrs. Madoff described herein, BLMIS was left with insufficient capital.

44. This adversary proceeding is being brought to recapture monies paid to or for the benefit of Mrs. Madoff so that this customer property can be equitably distributed among all of the victims of BLMIS in accordance with the provisions of SIPA.

45. The Trustee also seeks an accounting for all monies received by Mrs. Madoff from BLMIS and a constructive trust as a result of the past unjust enrichment of—and to prevent any further unjust enrichment by—Mrs. Madoff on all assets she received or receives in connection with BLMIS. The accounting and constructive trust are necessary in this case in light of the size of the Ponzi scheme and the amount of money improperly transferred to Mrs. Madoff to finance her personal life and personal investments.

46. The Transfers of money to Mrs. Madoff were, and continue to be, property of the consolidated estate within the meaning of section 541 of the Bankruptcy Code as well as

customer property within the meaning of 15 U.S.C. § 78*lll*(4), and are subject to turnover pursuant to section 542 of the Bankruptcy Code.

47.  The Transfers are avoidable and recoverable under sections 544, 548(a), 550(a), and 551 of the Bankruptcy Code, applicable provisions of SIPA, particularly 15 U.S.C. § 78fff-2(c)(3), and applicable provisions of N.Y. CPLR 203(g) and N.Y. Debt. & Cred. Law §§ 273-279.

48.  A total of 111 transfers in the collective amount of $44,882,355 (the "Six Year Transfers") were made during the six years prior to the Filing Date and are avoidable and recoverable under sections 544, 550(a), and 551 of the Bankruptcy Code, applicable provisions of SIPA, particularly 15 U.S.C. § 78fff-2(c)(3), and applicable provisions of N.Y. Debt. & Cred. Law §§ 273-279.

49.  Of the Six Year Transfers, at least 38 in the collective amount of $21,116,820 (the "Two Year Transfers") were made during the two years prior to the Filing Date, and are additionally recoverable under sections 548(a)(1), 550(a), and 551 of the Bankruptcy Code and applicable provisions of SIPA, particularly 15 U.S.C. 78fff-2(c)(3).

50.  To the extent that any of the recovery counts may be inconsistent with each other, they are to be treated as being pled in the alternative.

51.  The Trustee's investigation is on-going and the Trustee reserves the right to (i) supplement the information on the Transfers and any additional transfers, and (ii) seek recovery of such additional transfers.

## FIRST CAUSE OF ACTION
## TURNOVER AND ACCOUNTING - 11 U.S.C. § 542

52. The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

53. The transfers constitute property of the estate to be recovered and administered by the Trustee pursuant to section 541 of the Bankruptcy Code and 15 U.S.C. §§ 78fff-2(c)(3)4 and 78*lll*(4).

54. As a result of the foregoing, pursuant to section 542 of the Bankruptcy Code and 15 U.S.C. § 78fff-2(c)(3), the Trustee is entitled to the immediate payment and turnover from the defendant of any and all transfers made by BLMIS, directly or indirectly, to the defendant.

55. As a result of the foregoing, pursuant to section 542 of the Bankruptcy Code, the Trustee is also entitled to an accounting of all such transfers received by Mrs. Madoff from BLMIS, directly or indirectly.

## SECOND CAUSE OF ACTION
## FRAUDULENT TRANSFERS - 11 U.S.C. §§ 548(a)(1)(A), 550, AND 551

56. The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

57. The Two-Year Transfers were made on or within two years before the Filing Date.

58. The Two-Year Transfers were made by BLMIS with the actual intent to hinder, delay, or defraud some or all of BLMIS's then-existing or future creditors.

59. The Two-Year Transfers constitute a fraudulent transfer avoidable by the Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and recoverable from Mrs. Madoff pursuant to section 550(a) of the Bankruptcy Code and 78 U.S.C. § 78fff-2(c)(3).

60. As a result of the foregoing, pursuant to sections 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code and 78 U.S.C. § 78fff-2(c)(3), the Trustee is entitled to a judgment: (a) avoiding and preserving the Two-Year Transfers; (b) directing that the Two-Year Transfers be set aside; and (c) recovering the Two-Year Transfers, or the value thereof, from Mrs. Madoff for the benefit of the consolidated estate of BLMIS.

**THIRD CAUSE OF ACTION**
**FRAUDULENT TRANSFER - 11 U.S.C. §§ 548(a)(1)(B) , 550, AND 551**

61. The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

62. The Two-Year Transfers were made on or within two years before the Filing Date.

63. BLMIS received less than a reasonably equivalent value in exchange for each of the Two-Year Transfers.

64. At the time of each of the Two-Year Transfers, BLMIS was insolvent, or became insolvent, as a result of the Two-Year Transfer in question.

65. At the time of each of the Two-Year Transfers, BLMIS was engaged in a business or a transaction, or was about to engage in business or a transaction, for which any property remaining with BLMIS was an unreasonably small capital.

66. At the time of each of the Two-Year Transfers, BLMIS intended to incur, or believed that it would incur, debts that would be beyond BLMIS's ability to pay as such debts matured.

67. The Two-Year Transfers constitute fraudulent transfers avoidable by the Trustee pursuant to section 548(a)(1)(B) of the Bankruptcy Code and recoverable from Mrs. Madoff pursuant to section 550(a) of the Bankruptcy Code and 15 U.S.C. § 78fff-2(c)(3).

68. As a result of the foregoing, pursuant to sections 548(a)(1)(B), 550(a), and 551 of the Bankruptcy Code and 15 U.S.C. § 78fff-2(c)(3), the Trustee is entitled to a judgment: (a) avoiding and preserving the Two-Year Transfers; (b) directing that the Two-Year Transfers be set aside; and (c) recovering the Two-Year Transfers, or the value thereof, from Mrs. Madoff for the benefit of the consolidated estate of BLMIS.

**FOURTH CAUSE OF ACTION**
**FRAUDULENT TRANSFER - NEW YORK DEBTOR AND CREDITOR LAW**
**§§ 276, 276-a, 278 AND/OR 279, AND 11 U.S.C. §§ 544, 550(a), AND 551**

69. The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

70. At all times relevant to the Six-Year Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

71. The Six-Year Transfers were made by BLMIS with the actual intent to hinder, delay, or defraud the creditors of BLMIS. BLMIS made the Six-Year Transfers to, or for the benefit of, the defendant in furtherance of a fraudulent investment scheme.

72. As a result of the foregoing, pursuant to sections 276, 276-a, 278 and/or 279 of the New York Debtor and Creditor Law, sections 544, 550(a), and 551 of the Bankruptcy Code, and 15 U.S.C. § 78fff-2(c)(3), the Trustee is entitled to a judgment: (a) avoiding and preserving the Six-Year Transfers; (b) directing that the Six-Year Transfers be set aside; (c) recovering the Six-Year Transfers, or the value thereof, from Mrs. Madoff for the benefit of the consolidated estate of BLMIS; and (d) recovering attorneys' fees from Mrs. Madoff.

### FIFTH CAUSE OF ACTION
### FRAUDULENT TRANSFER - NEW YORK DEBTOR AND CREDITOR LAW
### §§ 273 AND 278 AND/OR 279, AND 11 U.S.C. §§ 544, 550(a), AND 551

73. The Trustee incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

74. At all relevant times there was and is at least one or more creditors who held and hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

75. BLMIS did not receive fair consideration for the Six-Year Transfers.

76. BLMIS was insolvent at the time it made each of the Six-Year Transfers or, in the alterative, BLMIS became insolvent as a result of each of the Six-Year Transfers.

77. As a result of the foregoing, the Trustee is entitled to a judgment pursuant to sections 273, 278, and 279 of the New York Debtor and Creditor Law, sections 544, 550(a), and 551 of the Bankruptcy Code, and 15 U.S.C. § 78fff-2(c)(3): (a) avoiding and preserving the Six-Year

Transfers; (b) directing that the Six-Year Transfers be set aside; and (c) recovering the Six-Year Transfers, or the value thereof, for the benefit of the consolidated estate of BLMIS.

### SIXTH CAUSE OF ACTION
### FRAUDULENT TRANSFERS - NEW YORK DEBTOR AND CREDITOR LAW
### §§274, 278 AND/OR 279, AND 11 U.S.C. §§ 544, 550(a), AND 551

78. The Trustee incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

79. At all relevant times there was and is at least one or more creditors who held and hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

80. BLMIS did not receive fair consideration for the Six-Year Transfers.

81. At the time BLMIS made each of the Six-Year Transfers, BLMIS was engaged or was about to engage in a business or transaction for which the property remaining in its hands after each of the Six-Year Transfers was an unreasonably small capital.

82. As a result of the foregoing, pursuant to sections 274, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544, 550(a), and 551 of the Bankruptcy Code, and 15 U.S.C. § 78fff-2(c)(3), the Trustee is entitled to a judgment: (a) avoiding and preserving the Six-Year Transfers; (b) directing that the Six-Year Transfers be set aside; and (c) recovering the Six-Year Transfers, or the value thereof, from Mrs. Madoff for the benefit of the consolidated estate of BLMIS.

## SEVENTH CAUSE OF ACTION
## FRAUDULENT TRANSFERS - NEW YORK DEBTOR AND CREDITOR LAW
### §§ 275, 278, AND/OR 279, AND 11 U.S.C. §§ 544, 550(a), AND 551

83. The Trustee incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

84. At all relevant times there was and is at least one or more creditors who held and hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

85. BLMIS did not receive fair consideration for the Six-Year Transfers.

86. At the time BLMIS made each of the Six-Year Transfers, BLMIS had incurred, was intending to incur, or believed that it would incur debts beyond its ability to pay them as the debts matured.

87. As a result of the foregoing, pursuant to sections 275, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544, 550(a), and 551 of the Bankruptcy Code, and 15 U.S.C. § 78fff-2(c)(3), the Trustee is entitled to a judgment: (a) avoiding and preserving the Six-Year Transfers; (b) directing that the Six-Year Transfers be set aside; and (c) recovering the Six-Year Transfers, or the value thereof, from Mrs. Madoff for the benefit of the consolidated estate of BLMIS.

## EIGHTH CAUSE OF ACTION
## UNDISCOVERED FRAUDULENT TRANSFERS - NEW YORK CIVIL PROCEDURE LAW AND RULES 203(g) AND NEW YORK DEBTOR AND CREDITOR LAW §§ 276, 276-a, 278, AND/OR 279, AND 11 U.S.C. §§ 544, 550(a), AND 551

88. The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

89. At all times relevant to the Transfers, the fraudulent scheme perpetrated by BLMIS was not reasonably discoverable by at least one unsecured creditor of BLMIS.

90. At all times relevant to the Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

91. The Transfers were made by BLMIS with the actual intent to hinder, delay, or defraud the creditors of BLMIS. BLMIS made the Transfers to or for the benefit of Mrs. Madoff in furtherance of a fraudulent investment scheme.

92. As a result of the foregoing, pursuant to NY CPLR 203(g) sections 276, 276-a, 278, and/or 279 of the and New York Debtor and Creditor Law sections 544, 550(a), and 551 of the Bankruptcy Code, and 15 U.S.C. § 78fff-2(c)(3), the Trustee is entitled to a judgment: (a) avoiding and preserving the Transfers; (b) directing that the Transfers be set aside; (c) recovering the Transfers, or the value thereof, from Mrs. Madoff for the benefit of the consolidated estate of BLMIS; and (d) recovering attorneys' fees from Mrs. Madoff.

## NINTH CAUSE OF ACTION
## RECOVERY OF SUBSEQUENT TRANSFERS - NEW YORK DEBTOR AND CREDITOR LAW § 278 AND 11 U.S.C. §§ 544, 548, 550(a), AND 551

93. The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

94. Each of the Transfers are avoidable pursuant to sections 544 and/or 548 of the Bankruptcy Code.

95. On information and belief, some or all of the Transfers were subsequently transferred to family members or affiliated/other entities, either directly or indirectly (collectively, the "Subsequent Transfers").

96. Each of the Subsequent Transfers were made directly or indirectly to one or more of Mrs. Madoff's family members or affiliated/other entities.

97. Mrs. Madoff is an immediate or mediate transferee of the Subsequent Transfers.

98. As a result of the foregoing, pursuant to section 278 of the New York Debtor and Creditor Law, sections 544, 548, 550(a) and 551 of the Bankruptcy Code, and 15 U.S.C. § 78fff-2(c)(3), the Trustee is entitled to a judgment against Mrs. Madoff: (a) avoiding and preserving the Subsequent Transfers; and (b) recovering the Subsequent Transfers, or the value thereof, from Mrs. Madoff for the benefit of the estate of BLMIS.

## TENTH CAUSE OF ACTION
## DISALLOWANCE OF MRS. MADOFF'S CLAIMS - 11 U.S.C. § 502(b) and (d)

99. The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

100. By Proof Of Claim, dated June 30, 2009 and received July 2, 2009, Mrs. Madoff filed a claim in this proceeding (the "Claim"). Mrs. Madoff's claim was filed as "a contingent and unliquidated claim" in connection with four pending actions "seeking contribution, indemnification and/or reimbursement" for any damages awarded against her in those actions.

101. Mrs. Madoff's Claim is not supported by the books and records of BLMIS nor the claim materials submitted by Mrs. Madoff, and, therefore, should be disallowed pursuant to section 502(b) of the Bankruptcy Code.

102. The Claim also should not be allowed as a customer claim or as a general unsecured claim. Mrs. Madoff is the recipient of transfers of BLMIS' property which are recoverable under sections 544, 548, and 550 of the Bankruptcy Code and 15 U.S.C. § 78fff-2(c)(3), and Mrs. Madoff has not returned the Transfers to the Trustee. As a result, pursuant to section 502(d) of the Bankruptcy Code, the Claim must be disallowed unless and until Mrs. Madoff return the Transfers to the Trustee.

103. As a result of the foregoing, the Trustee is entitled to an order disallowing the Claim.

## ELEVENTH CAUSE OF ACTION
## CONVERSION

104.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

105.    BLMIS had a possessory right and interest to its assets, including its customers' investment funds.

106.    Mrs. Madoff converted the investment funds of BLMIS customers when she received money originating from other BLMIS customer accounts in the form of payments and other transfers.  These actions deprived BLMIS and its creditors of the use of this money.

107.    As a direct and proximate result of this conduct, BLMIS and its creditors have not had the use of the money converted by Mrs. Madoff.

108.    By reason of the above, the Trustee, on behalf of BLMIS and its creditors, is entitled to an award of compensatory damages, in an amount to be determined at trial.

109.    Mrs. Madoff's conscious, willful, wanton, and malicious conduct entitles the Trustee, on behalf of BLMIS and its creditors, to an award of punitive damages, in an amount to be determined at trial.

## TWELFTH CAUSE OF ACTION
## UNJUST ENRICHMENT

110.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

111.    Mrs. Madoff benefited from the receipt of money from BLMIS in the form of payments and other transfers which were the property of BLMIS and its customers, and for which Mrs. Madoff did not adequately compensate BLMIS or provide value.

112.    This enrichment was at the expense of BLMIS and, ultimately, at the expense of BLMIS's other customers.

113.    Equity and good conscience require full restitution of the monies received by Mrs. Madoff from BLMIS.

114.    Mrs. Madoff's conscious, intentional and willful tortious conduct entitles BLMIS to recapture profits derived by Mrs. Madoff utilizing monies they received from BLMIS including, by way of example and without limitation, profits earned from real estate interests they purchased with BLMIS's customer funds.

115.    By reason of the above, the Trustee, pursuant to section 544 of the Bankruptcy Code and other applicable law, on behalf of BLMIS and its creditors, is entitled to an award of compensatory damages, in an amount to be determined at trial.

**THIRTEENTH CAUSE OF ACTION**
**CONSTRUCTIVE TRUST**

116.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

117.    As set forth above, the assets of BLMIS have been wrongfully diverted as a result of fraudulent conveyances, conversions, and other wrongdoing of Mrs. Madoff for her own, and her family's, individual interests and enrichment.

118.    The Trustee has no adequate remedy at law.

119.    Because of the past unjust enrichment of Mrs. Madoff, the Trustee is entitled to the imposition of a constructive trust with respect to any transfer of funds, assets, or property from BLMIS as well as to any profits received by Mrs. Madoff in the past or on a going forward basis in connection with BLMIS.

### FOURTEENTH CAUSE OF ACTION
### ACCOUNTING

120.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

121.    As set forth above, the assets of BLMIS have been wrongfully diverted as a result of fraudulent conveyances, breaches of fiduciary duties, conversions, and other wrongdoing of Mrs. Madoff for her own, and her family's, individual interests and enrichment.

122.    The Trustee has no adequate remedy at law.

123.    To compensate BLMIS for the amount of monies Mrs. Madoff diverted from BLMIS for her own benefit, it is necessary for Mrs. Madoff to provide an accounting of any transfer of funds, assets, or property received from BLMIS, as well as to any profits in the past and on a going forward basis in connection with BLMIS.  Complete information regarding the amount of such transfers misused by Mrs. Madoff for her own benefit is within her possession, custody, and control.

**WHEREFORE**, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against Mrs. Madoff as follows:

(a)     on the First Cause of Action, pursuant to section 542 of the Bankruptcy Code and 15 U.S.C. § 78fff-2(c)(3): (a) that the property that was the subject of the Transfers be immediately delivered and turned over to the Trustee; and (b) for an accounting by Mrs. Madoff of the property that was the subject of the Transfers or the value of such property;

(b)     on the Second Cause of Action, pursuant to sections 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code and 15 U.S.C. § 78fff-2(c)(3): (a) avoiding and preserving the Two-Year Transfers; (b) directing that the Two-Year Transfers be set aside; and (c) recovering the Two-Year Transfers, or the value thereof, from Mrs. Madoff for the benefit of the consolidated estate of BLMIS;

(c)     on the Third Cause of Action, pursuant to sections 548(a)(1)(B), 550(a), and 551 of the Bankruptcy Code and 15 U.S.C. § 78fff-2(c)(3): (a) avoiding and preserving the Two-Year Transfers; (b) directing that the Two-Year Transfers be set aside; and (c) recovering the Two-Year Transfers, or the value thereof, from Mrs. Madoff for the benefit of the consolidated estate of BLMIS;

(d)     on the Fourth Cause of Action, pursuant to sections 276, 276-a, 278, and/or 279 of the New York Debtor & Creditor Law, sections 544, 550(a), and 551 of the Bankruptcy Code, and 15 U.S.C. § 78fff-2(c)(3): (a) avoiding and preserving the Six-Year Transfers; (b) directing that the Six-Year Transfers be set aside; (c) recovering the Six-Year Transfers, or the value thereof, from Mrs. Madoff for the benefit of the consolidated estate of BLMIS; and (d) recovering attorneys' fees from Mrs. Madoff;

(e)    on the Fifth Cause of Action, pursuant to sections 273, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544, 550, and 551 of the Bankruptcy Code, and 15 U.S.C. § 78fff-2(c)(3): (a) avoiding and preserving the Six-Year Transfers; (b) directing that the Six-Year Transfers be set aside; and (c) recovering the Six-Year Transfers, or the value thereof, from Mrs. Madoff for the benefit of the consolidated estate of BLMIS;

(f)    on the Sixth Cause of Action, pursuant to sections 274, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544, 550, 551, and 1107 of the Bankruptcy Code, and 15 U.S.C. § 78fff-2(c)(3): (a) avoiding and preserving the Six-Year Fraudulent Transfers; (b) directing the Six-Year Transfers be set aside; and (c) recovering the Six-Year Transfers, or the value thereof, from Mrs. Madoff for the benefit of the consolidated estate of BLMIS;

(g)    on the Seventh Cause of Action, pursuant to sections 275, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544, 550, 551, and 1107 of the Bankruptcy Code, and 15 U.S.C. § 78fff-2(c)(3): (a) avoiding and preserving the Six-Year Transfers; (b) directing that the Six-Year Transfers be set aside; and (c) recovering the Six-Year Transfers, or the value thereof, from Mrs. Madoff for the benefit of the consolidated estate of BLMIS;

(h)    on the Eighth Cause of Action, pursuant to NY CPLR 203(g), sections 276, 276-a, 278, and/or 279 of the New York Debtor & Creditor Law, and sections 544, 550(a), and 551 of the Bankruptcy Code: (a) avoiding and preserving the Transfers; (b) directing that the Transfers be set aside; (c) recovering the Transfers, or the value thereof, from Mrs. Madoff for the benefit of the consolidated estate of BLMIS; and (d) recovering attorneys' fees from Mrs. Madoff;

(i)    on the Ninth Cause of Action, pursuant to section 278 of the New York Debtor and Creditor Law, sections 550(a) and 551 of the Bankruptcy Code, and 15 U.S.C. § 78fff-

2(c)(3): (a) preserving the Subsequent Transfers; (b) directing that the Subsequent Transfers be set aside; (c) recovering the Subsequent Transfers, or the value thereof, from Mrs. Madoff for the benefit of the consolidated estate of BLMIS; and (d) recovering attorneys' fees from Mrs. Madoff;

(j)     on the Tenth Cause of Action, that the claim or claims of Mrs. Madoff be disallowed;

(k)     on the Eleventh Cause of Action against Mrs. Madoff for the wanton, willful, and malicious conversion of BLMIS assets, for compensatory and punitive damages in amounts to be determined at trial;

(l)     on the Twelfth Cause of Action against Mrs. Madoff for unjust enrichment, for compensatory damages in an amount to be determined at trial;

(m)     on the Thirteenth Cause of Action against Mrs. Madoff for the imposition of a constructive trust upon any transfer of funds, assets, or property received from BLMIS as well as to any profits in the past and on a going forward basis received by Mrs. Madoff in connection with BLMIS, in favor of the Trustee for the benefit of BLMIS's estate;

(n)     on the Fourteenth Cause of Action against Mrs. Madoff for an accounting of any transfer of funds, assets, or property received from BLMIS as well as to any profits in the past and on a going forward basis received by Mrs. Madoff in connection with BLMIS;

(o)     on all Claims for Relief, pursuant to common law and N.Y. C.P.L.R. 5001, 5004 awarding the Trustee prejudgment interest from the date on which any transfer of BLMIS funds, assets, or property were received by each Family Defendants;

(p)     awarding the Trustee all applicable attorneys' fees, interest, costs, and

disbursements of this action;

(q)     granting the Trustee such other, further, and different relief as the Court deems

just, proper, and equitable.

Date:  New York, New York
       July 29, 2009

                      BAKER & HOSTETLER LLP

                      BY:  *s/David J. Sheehan*
                                David J. Sheehan
                                Email: dsheehan@bakerlaw.com
                                Marc E. Hirschfield
                                Email: mhirschfield@bakerlaw.com
                                Keith R. Murphy
                                Email: kmurphy@bakerlaw.com

                      45 Rockefeller Plaza
                      New York, New York 10111
                      Telephone: (212) 589-4200
                      Facsimile: (212) 589-4201

                      *Attorneys for Irving H. Picard, Esq.,*
                      *Trustee for the SIPA Liquidation of Bernard L.*
                      *Madoff Investment Securities LLC*

Of Counsel:

John Siegal
Email: jsiegal@bakerlaw.com
Adam B. Oppenheim
Email: aoppenheim@bakerlaw.com